## Commonwealth *v.* Renzo, Appellant.

216        147
f218      ¹491

*Criminal law—Murder—Continuance—Counsel.*

Where on an indictment for murder it appears that counsel were assigned to the prisoner several weeks before the trial, and that after their application for a continuance had been refused, they still had twelve days for preparation before the jury was actually called, the refusal of the continuance is not ground for reversing the judgment.

*Criminal law—Murder—Practice—Reading extracts from reports.*

While in the trial of an indictment for murder, the reading by the prosecution of extracts from the state reports, is not a desirable practice, still such practice, subject to the discretion and control of the judge, is not unlawful.

*Criminal law—Murder—Lunacy—" Transitory frenzy."*

The law of Pennsylvania does not tolerate the doctrine of "transitory frenzy" as a defense to murder. In the eye of the law it is nothing but vindictive and reckless temper.

Argued Oct. 15, 1906. Appeal, No. 136, Oct. T., 1906, by defendant, from judgment of O. & T. Indiana Co., June T., 1905, No. 1, on verdict of guilty in case of Commonwealth v. Carmene Renzo. Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER and STEWART, JJ. Affirmed.

Indictment for murder. Before TELFORD, P. J.

Verdict of guilty upon which judgment of sentence was passed.

*Errors assigned* were as follows :

1. The court erred in refusing to continue the trial of the case on the application of the defendant ; making the following order, " Sept. 8, 1905, after hearing and considering the reasons urged for a continuance in this case we do not feel that it is our duty to grant it. There has been time for preparation, we think, since counsel were assigned for this defendant and there yet remains ten days for preparation; the continuance of the case is therefore refused."

2. The court erred in allowing the private counsel for the commonwealth to take up the state reports and read garbled extracts from the same, thereby giving a false impression of the law to the jury to the great prejudice of the defendant

while arguing the case to the jury, and under the objection of the counsel for the defendant.

3. The court erred in taking the case from the jury as to the question of insanity, wherein he charged as follows: "So far as we have noticed or can recall there is no evidence in this case of defendant's insanity at the time of the commission of the crime; but this is for you to discover, and if you find no such evidence then it will be unnecessary for you to consider this phase of the case. A physician was called by the defendant, who testified to a mental condition that he says sometimes exists, and recited the symptom or effect of such a condition, but not with reference to this case, as he had no knowledge of it; and so his evidence, if you find no evidence of insanity in the defendant at the time of the crime, cannot affect the question of the guilt or innocence of this defendant."

*E. Walker Smith*, with him *H. E. Anderson*, for appellant.

*George J. Feit*, district attorney, with him *James W. Mack*, for appellee.

PER CURIAM, November 2, 1906:

No assignment of error has any merit or excuses bringing this case here.

Counsel were assigned to the prisoner several weeks before the trial and after their application for a continuance had been refused they still had twelve days for preparation before the jury was actually called. The case was not at all complicated, either in facts or in law, and counsel have not ventured to assert here that there was any defense they could have made which was prevented by want of time.

There was nothing to justify the charge that the prosecution read "garbled extracts" from the state reports to the jury. Such reading is not a desirable practice. It leads to counter extracts by the other side and tends to confuse the minds of the jury. They are much more likely to get clear ideas of the law if they receive it altogether from the judge. But the practice, subject to the discretion and control of the judge, is not unlawful, and to stigmatize it as " reading garbled

extracts," without even an effort to show any misreading or perversion, is reprehensible.

There was no evidence of insanity to submit to the jury. Indulgent as the law of Pennsylvania is in favor of the accused, it has never tolerated, nor is likely to tolerate, a doctrine of "transitory frenzy" as a defense to murder. The medical profession in their humane efforts to diagnose and ameliorate every form of mental as well as bodily variation from normal condition, may be justified in giving it a specific name and description, but in the eye of the law it is nothing but vindictive and reckless temper.

The judgment is affirmed and the record remitted to the court below that execution may be had according to law.