J-S49025-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JOHN MICHAEL ZAWIERUCHA, | |
| Appellant | No. 89 MDA 2015 |

Appeal from the Judgment of Sentence entered September 3, 2014,
in the Court of Common Pleas of Franklin County,
Criminal Division, at No(s): CP-28-CR-0000543-2014

BEFORE: BENDER, P.J.E., ALLEN, and OLSON, JJ.

MEMORANDUM BY ALLEN, J.: **FILED AUGUST 07, 2015**

John Zawierucha ("Appellant") appeals from the the judgment of sentence imposed after a jury convicted him of robbery, conspiracy to commit robbery, and theft by unlawful taking.[1] We affirm.

The trial court recounted the factual background as follows:

> The above-captioned charges arose out of events that transpired on April 13, 2014, at the Sunoco gas station in Greencastle, Pennsylvania. The victims, Michele Meadows and Alice Watkins, were working together at the Sunoco gas station as clerks at or around 9:15 or 9:30. At that time, three men entered the store, two of which had bandanas over their faces. The first man, Deonta Williams, jumped over the counter and pointed a gun at the victims. He threatened to kill the clerks if they did not open the safe. While this was occurring, the second suspect, [Appellant], walked around the counter and began

---

[1] 18 Pa.C.S. §§ 3701, 903, and 3921.

putting money and Newport cigarettes inside a pink and gray duffel bag. The third suspect, Trevon Walker, then took the clerks to another part of the store and told them to relax and that everything would be over shortly. The three suspects eventually fled with the cash and cigarettes. The victims subsequently called police to report the robbery.

Follow[ing] their departure from the gas station, the three suspects were picked up by two young women in a black Honda Civic. The two young women were later identified as Tiffani Robey and Brittany Johnson. The black Honda Civic was initially followed by two witnesses, Richard Rhodes and Lori Harbaugh, who testified they had earlier noticed the two young women parked in a suspicious location in relation to the Sunoco gas station. (N.T. 8/4/2014 p. 107). Mr. Rhodes testified that upon seeing the three male suspects running towards the car, one with a duffel bag in hand, he suspected a potential robbery and followed the suspects at a high rate of speed. *Id.* at 88. Although the suspects eventually lost Mr. Rhodes and Ms. Harbaugh, they were able to get a tag number of the black Honda Civic and conveyed it to police. *Id*. at 89.

Trooper Paul Decker testified that he assisted Trooper Dave Rush in investigating this incident and met with Mr. Rhodes and administered him a photo lineup. *Id.* at 111-112. Mr. Rhodes was able to identify one of the two females in the car, Tiffany Robey. *Id*. at 115. Tiffany Robey and Brittany Johnson were later arrested and spoke with police a total of three (3) times. Both women testified at trial that they fabricated an original story implicating three other men, names they both made up. (N.T. 8/5/2014 p. at 20, 47-48). None of the names provided was that of [Appellant], Deonta Williams, or Trevon Walker. Eventually, both women testified they decided to accept responsibility and as a result turned the real culprits in. *Id*. at 20, 49. Both told police they had driven [Appellant], Deonta Williams, and Trevon Walker to the Sunoco in order to commit the robbery and then picked up the men and proceeded to flee the scene. The women testified that they subsequently drove to a Red Roof Inn in Germantown, Maryland, where the five (5) individuals distributed the cash and cigarettes. *Id*. at 17, 46. Trevon Walker also testified at trial that [Appellant] participated in the robbery and was the suspect identified as carrying the duffle bag. (N.T. 8/4/2014 p. 119-39). Finally, evidence presented at trial confirmed that [Appellant's] cell phone was in fact near the Sunoco gas station at or around the time of the

robbery. (N.T. 8/5/2014 p. 61-70). Tiffani Robey testified that [Appellant] had given her the phone on the night before the robbery but that this was not uncommon and that she was present with [Appellant] while she had his phone. *Id*. at 13-14.

[Appellant] attempted to offer an alibi defense at trial and called three witnesses in support. The first was Stephanie Champagne, [Appellant's] Mother. Ms. Champagne testified that she dropped [Appellant] off at a McDonalds in Rockville, Maryland at around 8:10 pm on the night of the alleged robbery after picking him up from an AA meeting. (N.T. 8/5/2014 p. 99-100). Ms. Champagne testified that [Appellant] was with Trevon Walker at the time. *Id*. at 100. Kenneth Wilder, [Appellant's] cousin, also testified that he saw and briefly met with [Appellant] and Trevon Walker at McDonalds on April 13, 2013, at around 8:15 in the evening. *Id*. at 104-05. Mr. Wilder further testified that he dropped [Appellant] and Trevon Walker off at [Appellant's] nearby sober house at around 8:30. *Id*. Finally, Katelyn Coutu, Kenneth Wilder's girlfriend, testified that she was present in the car when [Appellant] and Trevon Walker were dropped off at [Appellant's] sober house. *Id.* at 120-21. The crux of [Appellant's] alibi defense was that given the amount of time it takes to travel to the Sunoco from his sober house, he could not possibly have participated in the robbery. Ultimately, the jury found this unpersuasive and convicted him on the aforementioned counts.

Trial Court Opinion, 12/19/14, at 2-4.

On September 3, 2014, the trial court sentenced Appellant to an aggregate 15 to 30 years of incarceration.[2] Appellant filed a post-sentence motion on September 6, 2014, which the trial court denied on

---

[2] Appellant's sentence for robbery was a mandatory 10 to 20 years because it was Appellant's second conviction of a violent crime. ***See id***. at 1.

December 19, 2014.  Appellant appealed.  Both Appellant and the trial court have complied with Pa.R.A.P. 1925(b).

On appeal, Appellant presents two issues for our review:

1.    Was the evidence insufficient for the guilty verdict?

2.    Was the guilty verdict against the weight of the evidence?

Appellant's Brief at 3.

In arguing that the evidence was insufficient to support his convictions, Appellant recites three and a half pages of case law, followed by his assertion:

> Appellant was convicted on pure speculation.  There were no facts presented by the Commonwealth at trial that proved the Appellant was guilty of the crimes charged.  The jury was inflamed by the three (3) Commonwealth witnesses that were granted immunity in this matter.  All three (3) Commonwealth witnesses admitted they were involved in this violent criminal crime and provided major inconsistencies with each of their testimony.  The Jury rendered its verdict based on alleged circumstantial evidence which did not meet the elements of the crimes charged and which certainly created extreme reasonable doubt.

Appellant's Brief at 10-11.

The above paragraph constitutes Appellant's entire sufficiency argument, which is belied by the record.  After reviewing the notes of testimony, we have determined that The Honorable Carol L. Van Horn, sitting as the trial court, has capably and accurately addressed Appellant's sufficiency argument, such that further commentary by this Court would be redundant.  *See* Trial Court Opinion, 12/19/14, at 4 – 12 (including the trial

court's axiomatic conclusion that "the determination of credibility and sufficiency of the three co-participants' testimony and the other independent evidence was for the [jury as] factfinder to decide . . . ."). We therefore adopt the trial court's analysis as our own in disposing of this issue.

We are equally unpersuaded by Appellant's argument regarding the weight of the evidence. Appellant states "there were no witnesses that testified that they witnessed the Appellant commit the crimes [charged]." Appellant's Brief at 11. Appellant continues that he "was not involved in the criminal conduct in this matter and had a valid and true alibi defense." *Id*. at 12. Additionally, Appellant again references the "conflicting" testimony of "all three (3) of the government witnesses [who] testified they committed the crimes", and his "three (3) credible alibi witnesses, who testified under oath that it was impossible for the Appellant to commit the crimes charged . . . " *Id*. at 14.

Again, the trial court properly applied the law, recognizing, *inter alia*, that a verdict is against the weight of the evidence only where it is "so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative." Trial Court Opinion, 12/19/14, at 12, *citing* ***Commonwealth v. Hudson***, 955 A.2d 1031, 1035 (Pa. Super. 2008). The trial court observed that "the jury's credibility determinations were quite understandable in the instant case." *Id*. at 13. Our review of the notes of testimony supports the trial court, which recognized the province of the jury as factfinder, and observed that "the verdicts were not so contrary to the

evidence as to shock one's sense of justice." ***Id***. at 13-14. We may not re-weigh the testimony adduced at Appellant's trial. ***See Commonwealth v. Hawkins,*** 701 A.2d 492, 501 (Pa. 1997) (the credibility of witnesses is "solely for the [fact finder] to determine"); ***see also Commonwealth v. Dougherty,*** 860 A.2d 31, 36 (Pa. Super. 2004) (citations omitted) ("This Court cannot substitute its judgment for that of the [fact finder] on issues of credibility."). Moreover, "[i]t is the function of the [fact finder] to evaluate evidence adduced at trial to reach a determination as to the facts, and where the verdict is based on substantial, if conflicting evidence, it is conclusive on appeal." ***Commonwealth v. Reynolds,*** 835 A.2d 720, 726 (Pa. Super. 2003) (citation omitted). Given the foregoing, we find no merit to Appellant's weight claim.

Judgment of sentence affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/7/2015

- 6 -

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT
OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | CRIMINAL ACTION |
| | : | |
| vs. | : | No: 543-2014 |
| | : | |
| John Michael Zawierucha, | : | |
| Defendant | : | Honorable Carol L. Van Horn |

## OPINION AND ORDER OF COURT

Before Van Horn, J.

DEC 19 2014
ATTEST, A TRUE COPY
Clerk of Courts

IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT
OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | CRIMINAL ACTION |
| | : | |
| vs. | : | No: 543-2014 |
| | : | |
| John Michael Zawierucha, | : | |
| Defendant | : | Honorable Carol L. Van Horn |

## STATEMENT OF THE CASE

On August 6, 2014, a jury found the above captioned Defendant, John Michael Zawierucha guilty of Robbery,[1] Conspiracy to Commit Robbery[2] and Theft.[3] Defendant was sentenced on September 3, 2014, to an aggregate sentence of 15 to 30 years in a State Correctional Institution. The sentence for robbery, which was 10 to 20 years, was mandatory for the Defendant as the robbery was his second conviction for a crime of violence. Defendant filed a timely Post-Sentence Motion on September 6, 2014, which included a Motion for Judgment of Acquittal[4] challenging the sufficiency of the evidence to sustain the verdicts on all three convictions. Defendant's Post-Sentence Motion also included a Motion for a New Trial[5] which argued that the jury's verdict was against the weight of evidence. An Answer was not filed by the Commonwealth and the Defendant waived a hearing on the matter. The issue is now ripe for decision in this Opinion and Order of Court.

---

[1] 18 Pa. C.S. 3701(a)(ii).
[2] 18 Pa. C.S. 903. (18 Pa. C.S. 3701(a)(ii)).
[3] 18 Pa.C.S. § 3921.
[4] Such Motion is made pursuant to Pa.R.Crim.P. 720(B)(1)(a)(ii).
[5] Such Motion is made pursuant to Pa.R.Crim.P. 720(B)(1)(a)(iv).

## BACKGROUND

The above-captioned charges arose out of events that transpired on April 13, 2014, at the Sunoco gas station in Greencastle, Pennsylvania. The victims, Michele Meadows and Alice Watkins, were working together at the Sunoco gas station as clerks at or around 9:15 or 9:30. At that time, three men entered the store, two of which had bandanas over their faces. The first man, Deonta Williams, jumped over the counter and pointed a gun at the victims. He threatened to kill the clerks if they did not open the safe. While this was occurring, the second suspect, the Defendant, walked around the counter and began putting money and Newport cigarettes inside a pink and gray duffel bag. The third suspect, Trevon Walker, then took the clerks to another part of the store and told them to relax and that everything would be over shortly. The three suspects eventually fled with the cash and cigarettes. The victims subsequently called police to report the robbery.

Follow their departure from the gas station, the three suspects were picked up by two young women in a black Honda Civic. The two young women were later identified as Tiffani Robey and Brittany Johnson. The black Honda Civic was initially followed by two witnesses, Richard Rhodes and Lori Harbaugh, who testified they had earlier noticed the two young women parked in a suspicious location in relation to the Sunoco gas station. (N.T. 8/4/2014 p. 107). Mr. Rhoades testified that upon seeing the three male suspects running towards the car, one with a duffel bag in hand, he suspected a potential robbery and followed the suspects at a high rate of speed. *Id.* at 88. Although the suspects eventually lost Mr. Rhoades and Ms. Harbaugh, they were able to get a tag number of the black Honda Civic and conveyed it to police. *Id.* at 89.

2

Trooper Paul Decker testified that he assisted Trooper Dave Rush in investigating this incident and met with Mr. Rhoades and administered him a photo lineup. *Id.* at 111-112. Mr. Rhoades was able to identify one of the two females in the car, Tiffani Robey. *Id.* at 115. Tiffani Robey and Brittany Johnson were later arrested and spoke with police a total of three (3) times. Both women testified at trial that they fabricated an original story implicating three other men, names they both made up. (N.T. 8/5/2014 p. at 20, 47-48). None of the names provided was that of the Defendant, Deonta Williams, or Trevon Walker. Eventually, both women testified they decided to accept responsibility and as a result turned the real culprits in. *Id.* at 20, 49. Both told police they had driven the Defendant, Deonta Williams, and Trevon Walker to the Sunoco in order to commit the robbery and then picked up the men and proceeded to flee the scene. The women testified that they subsequently drove to a Red Roof Inn in Germantown, Maryland, where the five (5) individuals distributed the cash and cigarettes. *Id.* at 17, 46. Trevon Walker also testified at trial that the Defendant participated in the robbery and was the suspect identified as carrying the duffle bag. (N.T. 8/4/2014 p. 119-39). Finally, evidence presented at trial confirmed that Defendant's cell phone was in fact near the Sunoco gas station at or around the time of the robbery. (N.T. 8/5/2014 p. 61-70). Tiffani Robey testified that the Defendant had given her the phone on the night before the robbery but that this was not uncommon and that she was present with the Defendant while she had his phone. *Id.* at 13-14.

The Defendant attempted to offer an alibi defense at trial and called three witnesses in support. The first was Stephanie Champagne, the Defendant's Mother. Ms. Champagne testified that she dropped the Defendant off at a McDonalds in Rockville, Maryland at around 8:10 pm on the night of the alleged robbery after picking him up from an AA meeting. (N.T. 8/5/2014 p. 99-100). Ms. Champagne testified that the Defendant was with Trevon Walker at the time. *Id.* at

3

100. Kenneth Wilder, the Defendant's cousin, also testified that he saw and briefly meet with the Defendant and Trevon Walker at McDonalds on April 13, 2013, at around 8:15 in the evening. *Id* at. 104-05. Mr. Wilder further testified that he dropped the Defendant and Trevon Walker off at Defendant's nearby sober house at around 8:30. *Id.* Finally, Katelyn Coutu, Kenneth Wilder's girlfriend, testified that she was present in the car when the Defendant and Trevon Walker were dropped off at the Defendant's sober house. *Id.* at 120-21. The crux of Defendant's alibi defense was that given the amount of time it takes to travel to the Sunoco from his sober house, he could not possibly have participated in the robbery. Ultimately, the jury found this unpersuasive and convicted him on the aforementioned counts.

## DISCUSSION

### I. Sufficiency of the Evidence

Defendant moves the Court to enter a Judgment of Acquittal arguing that there was no credible evidence was presented to support a finding that he was guilty of the charges for which he was convicted. Thus, Defendant concludes that insufficient evidence was presented to sustain his convictions. The standard for evaluating sufficiency of the evidence claims is well established:

> The standard we apply when reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.

*Commonwealth v. McClendon*, 874 A.2d 1223, 1228 (Pa. Super. 2005) (citations omitted); *see also Commonwealth v. Moreno*, 14 A.3d 133, 136 (Pa. Super. 2011). When applying this standard, the court "may not weigh the evidence and substitute our judgment" for that of the jury. *Commonwealth v. Mack*, 850 A.2d 690, 693 (Pa. Super. 2004) (citations omitted). Moreover, "[a]ny doubts regarding a defendant's guilt may be resolved by the fact-finder unless the

4

evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Commonwealth v. Eckrote*, 12 A.3d 383, 386 (Pa. Super. 2010) (citing *Commonwealth v. DiStefano*, 782 A.2d 574, 582 (Pa. Super. 2001)). Importantly, "facts and circumstances established by the Commonwealth need not preclude every possibility of innocence." *Mack*, 850 A.2d at 693 (citations omitted). However, "guilt must be based on facts and conditions proved," and the evidence is insufficient if guilt is based on "suspicion or surmise." *Eckrote*, 12 A.3d at 386 (citing *Commonwealth v. Swerdlow*, 636 A.2d 1173 (Pa. Super. 1994)). A conviction may be based entirely on circumstantial evidence as long as the "evidence links the accused to the crime beyond a reasonable doubt." *Commonwealth v. Chmiel*, 639 A.2d 9, 11 (Pa. 1994) (citations omitted). Finally, when deciding whether the evidence is sufficient to sustain the verdict, "the entire record must be evaluated and all evidence actually received must be considered." *Mack*, 850 A.2d at 693 (citations omitted). Yet, "the fact finder is free to believe all, part, or none of the evidence presented at trial." *Commonwealth v. Moreno*, 14 A.3d 133, 136 (Pa. Super. 2011).

## A. Robbery

Defendant first argues that the evidence was insufficient to support a guilty verdict of robbery beyond a reasonable doubt because the Commonwealth failed to prove that the Defendant was even near the location of the subject robbery, the Sunoco station near Interstate 81 Exit 10 in Antrim Township, Pennsylvania. Robbery is defined, in pertinent part, as follows:

> A person is guilty of robbery if, in the course of committing a theft, he:
> (i) inflicts serious bodily injury upon another;
> (ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury;
> . . .

5

18 Pa. C.S. 3701(a)(i)-(ii). Because the evidence at trial allegedly failed to prove that the Defendant was close enough to commit the theft at the Sunoco in question, Defendant avers that he could not have threatened with or intentionally put either of the victims in fear of immediate serious bodily injury while committing a theft. Defendant first points to the fact that neither of victims, Michele Meadows or Alice Watkins, was able to positively identify the Defendant as a participant in the robbery.[6] Next, Defendant highlights that the three other witnesses who testified that the Defendant participated in the robbery were all co-participants themselves. The Defendant places significant emphasis on the fact that each of the co-participants who implicated him received favorable treatment in exchange for their testimony and were able to plead to more minor offenses than the Defendant. Defendant also contends that the co-participants admitted to participating in a crime of violence and dishonesty and that their recall of events was poor and contradictive.

Defendant concludes that this is the only evidence that identifies him as participant in the robbery and it is "so obviously incredible that it must be disregarded." (Def's Motion 9/16/14 p. 3). Defendant then avers that he called three credible witnesses who testified that he was not in the vicinity of the robbery on the night in question and therefore he could not have participated.

Although Defendant is correct that neither victim positively identified him, both identified the suspect believed to be the Defendant, as a taller individual wearing a grayish blue hoody and blue jeans. Both also testified that this suspect wore a bandana over his face during the robbery and was carrying a gray and pink duffle bag that he used to place the money and cigarettes into.

---

[6] It is important to note that the victims did testify that both the first and second suspects were wearing bandanas over their faces and had hoods up. (N.T. 8/4/14 p. 63, 67). Thus, most witnesses would likely have had trouble positively identifying either of these suspects.

6

As the Defendant correctly notes, the Commonwealth presented testimony of three undisputed co-participants in the robbery: Tiffani Robey, Brittany Johnson and Trevon Walker. The Defendant acknowledges that all three of these participants testified that the Defendant was present and participated in the robbery. The description of the Defendant at the time of the robbery by the three co-participants is also consistent with the testimony of the two victims of the second suspect. Specifically, Tiffani Robey, the Defendant's ex-girlfriend, testified that the Defendant was wearing a hoody and jeans and was also wearing a bandana over his face. (N.T. 8/5/14 p. 13). Additionally, she testified that the Defendant was carrying a duffel bag when he entered the Sunoco gas station. *Id.* at 15. Brittany Johnson further testified when the Defendant left the car he was carrying a "pink bag, my pink Nike bag." *Id.* at 44. Brittany Johnson also testified that the Defendant was one of the two men wearing a bandana and that he was wearing jeans and a dark colored hoody. *Id.* at 42. Finally, Trevon Walker identified not only himself, but also Deonta Williams and the Defendant as the perpetrators of the robbery in question. Specifically, Mr. Walker identified that the Defendant was carrying a bag that was "cotton candy pink" when the three men robbed the Sunoco and was wearing a black or blue hoody. (N.T. 8/4/14 p. 134, 137).

The heart of Defendant's initial argument appears to actually be a mixture of weight and sufficiency. To wit, Defendant argues that he called three credible witnesses, Stephanie Champaign, Kenneth Wilder and Kaitlyn Coutu, while the Commonwealth offered only the questionable testimony of admitted co-participants who received favorable treatment in exchange for their cooperation. Defendant also wholly dismisses the adequacy of the fact that the testimony provided by the victims in this case is consistent with that of the three admitted co-participants, simply because the victims could not positively identify the Defendant. This Court

7

cannot agree, as such an argument is rampant with incorrect conclusions. As mentioned, Defendant's argument is a mix of weight and sufficiency, as it deals in large part with the credibility of the testimony of witnesses *See Commonwealth v. Palo*, 24 A.3d 1050, 1055 (Pa. Super. 2011) ("[d]irected entirely to the credibility of the Commonwealth's chief witness, Appellant's claim challenges the weight, not the sufficiency, of the evidence."); *See also Commonwealth v. Griffin*, 65 A.3d 932, 939 (Pa. Super. 2013) (an argument that "goes to the credibility of the witness's testimony . . . is . . . not an attack on the sufficiency of the evidence, but an allegation regarding the weight it should have been afforded."). However, because Defendant does specifically address weight in his request for a new trial, the Court will begin our analysis solely on his sufficiency of the evidence claim. Importantly, as noted above, when evaluating a sufficiency of the evidence claim, the court "may not weigh the evidence and substitute our judgment" for that of the jury. *Mack*, 850 A.2d at 693 (citations omitted). Defendant's claim that he is entitled to a judgment of acquittal because the jury found the testimony of the Commonwealth's witnesses more credible than his essentially asks the Court to weigh the evidence differently than the jury did, which the Court will not do.

Although not required, the Court would also note that the fact the jury found the Commonwealth's witnesses to be more credible is quite logical and understandable. Defendant argues that the three witnesses he called were all credible because they provided consistent testimony and had nothing to gain by coming to trial to testify. Conveniently, Defendant fails to note in his Post-Sentence Motion the intimate relationship he shares with all three of these witnesses. To begin, Defendant's first witness, Stephanie Champagne, is his own mother. Next Kenneth Wilder is the Defendant's cousin and described him as a "brother." (N.T. 8/5/14 p. 103). Finally, Defendant's third witness, Kaitlyn Coutu, is the girlfriend of Mr. Wilder. Thus, to

8

suggest that neither of these three witnesses had "anything to gain by coming to trial to testify" is rather misleading. By providing a potential alibi defense for the Defendant, the witnesses would insure that the Defendant, an individual all three have a close relationship with, would remain out of prison. Such a close relationship would not, it and of itself, diminish the credibility of these witnesses. However, the jury was aware of these relationships and was entitled to assign the weight and credibility to the aforementioned testimony and did so in this case.

The Court simply cannot agree with Defendant's assertion that the testimony of the witnesses provided by the Commonwealth was "so obviously incredible that it must be disregarded" and as such is "so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances." *Eckrote*, 12 A.3d at 386. To the contrary, the Court finds that a majority of the testimony of both the victims and the three co-participants regarding the robbery and the Defendant's participation to be relatively consistent.[7] The Defendant takes great strides to highlight the fact that each of the three admitted co-participants received deals and favorable treatment in exchange for their testimony. However, the jury was well aware of this, as the Commonwealth asked each witness on direct examination about the treatment they were receiving in exchange for their testimony. (N.T. 8/4/14 at 121-122, 8/5/14 at 10, 37-38). Consequently, the jury was able to properly consider such circumstances in reaching their verdict.

Defendant also attempts to undermine the testimony of three admitted co-participants by emphasizing their participation in a crime of violence and dishonesty. However it is an apodictic rule that evidence consisting largely of testimony of even a single co-participant is sufficient to

---

[7] The Court is well aware of the rather bizarre and incoherent testimony provided by Trevon Walker on cross examination. See (N.T. 10/4/14 p. 147-159). However, Mr. Walker's testimony on direct regarding the actual logistics and details of the robbery was fairly consistent with the testimony of the victims, Tiffani Robey and Brittany Johnson.

9

sustain a robbery conviction. *Commonwealth. v. Palmer*, 462 A.2d 755, 761 (Pa. Super. 1983).

In *Palmer*, the defendant made a similar contention as in the instant case, arguing that evidence was insufficient to sustain his robbery conviction because the only direct and circumstantial evidence was supplied by a co-participant in the crime and was therefore a "corrupt source of unworthy belief." *Id*. The Superior Court promptly disposed of this argument stating:

> "Where parties in crime testify against each other, their testimony must be recognized as coming from a corrupt source and therefore must be subjected to the closest scrutiny." (Internal citations omitted). However, the issue of credibility is for the factfinder to resolve upon proper instructions by the trial court. The lower court properly instructed the jury on the manner in which to view [co-defendant's] testimony. Moreover, [co-defendant's] testimony was consistent throughout and corroborated both as to events and identifying details by other witnesses. It is within the province of the jury to accept or reject evidence presented by the Commonwealth. (Internal citations omitted). We cannot agree with appellant that [co-defendant's] testimony was so unreliable that the verdict was against the weight of the evidence. The lower court, which observed the testimony, found it consistent and corroborated. We believe that the jury reasonably believed [co-defendant], and we therefore find the evidence sufficient to sustain both convictions.

*Id*. Similar to *Palmer*, this Court also properly instructed the jury on the manner in which to view accomplice testimony, advising:

> These are the three rules to be applied to accomplice testimony: First, you should view the testimony of an accomplice with disfavor because it comes from a corrupt and polluted source; second you should examine the testimony of an accomplice closely and accept it only with care and caution; and, third, you should consider whether the testimony of the accomplice is supported in whole or in party by other evidence. Accomplice testimony is more dependable if it is supported by independent evidence.

(N.T. 8/6/14 at 46). Being properly instructed, the determination of the credibility and sufficiency of the three co-participants' testimony and the other independent evidence was for the factfinder to decide, and again, this Court will not disturb such a conclusion.

10

In resolving Defendant's sufficiency of the evidence claim, the Court is required to view all the evidence admitted at trial in the light most favorable to the verdict winner, the Commonwealth. This entails a determination of whether the evidence presented in support of the convictions was sufficient to enable the jury to find every element of the crimes beyond a reasonable doubt. Viewing the presented evidence in the light most favorable to the Commonwealth, such evidence is clearly sufficient to support Defendant's robbery conviction.

### B. Conspiracy to Commit Robbery

Defendant next argues that the evidence was insufficient to support a guilty verdict of conspiracy to commit robbery beyond a reasonable doubt because the Commonwealth failed to prove that the Defendant agreed with any of the co-participants to commit the robbery. Conspiracy is defined, in pertinent part, as follows:

> A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
> (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S. § 903. The previously discussed robbery definition also applies to Defendant's conspiracy to commit robbery conviction. 18 Pa. C.S. 3701(a)(ii). Similar to Defendant's previous insufficient evidence argument regarding his robbery conviction, Defendant asserts that the testimony provided by the three admitted co-participants is "simply incredible" and is insufficient evidence to support his conspiracy conviction. Specifically, Defendant argues that Tiffani Robey's testimony is the sole source of evidence that the Defendant conspired with the others to participate in the robbery and that the witnesses called by the Defendant rebutted this by testifying that he remained in the Rockville area on the night of the robbery. However, as

11

previously noted, evidence consisting largely of testimony of even a single co-participant is sufficient to sustain such a conviction. *Palmer*, 462 A.2d at 761. This Court finds that the jury reasonably believed the admitted co-participant's testimony regarding the agreement and planning of the five (5) participants to commit the robbery and such evidence is sufficient to sustain a conviction for conspiracy to commit robbery.

### C. Theft

Defendant also avers that the evidence was insufficient to support a guilty verdict for Theft beyond a reasonable doubt because, for the same reason articulated in his robbery argument, the Commonwealth failed to prove he was even near the location of the subject robbery. Theft is defined, in pertinent part, as follows:

> (a) Movable property.—A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.
>
> . . .

18 Pa.C.S. § 3921. The reasons set forth above disposing of Defendant's insufficient evidence argument regarding his robbery conviction are also applicable to Defendant's theft conviction. Consequently, Defendant's requested relief on this conviction must also be denied.

## II. Weight of the Evidence

Defendant also argues that, if this Court finds his sufficiency of the evidence argument claim to be without merit, the verdict issued by the jury on all three counts was against the weight of the evidence and that granting of a new trial is necessary in the interest of justice. The Court does not agree.

A verdict is against the weight of the evidence where it is "so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative." *Commonwealth v. Hudson*, 955 A.2d 1031, 1035 (Pa. Super. 2008). The jury is entitled to believe "all, part, or

12

none of the evidence, and credibility determinations rest solely within the purview of the fact-finder." *Commonwealth v. Treiber*, 874 A.2d 26, 30 (Pa. 2005). A jury does not have to believe any testimony and the weight to be credited to testimonial or other evidence presented is a determination resting solely with the jury. *See Commonwealth v. Flor*, 998 A.2d 606, 626 (Pa. 2010). A new trial should not be granted based upon "a mere conflict in the testimony" and must have a stronger foundation than a reassessment of the credibility of witnesses. *Commonwealth v. Bruce*, 916 A.2d 657, (Pa. Super. 2007). The court must not act as a thirteenth juror. *See id.* Rather, the Court must determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." *Id.* (citing *Commonwealth v. Widmer*, 744 A.2d 745, 751-52 (Pa. 2000)).

Defendant's weight of the evidence contention mirrors the facts upon which his sufficiency of evidence argument was premised. To wit, that the: (1) testimony of the victims of the robbery was not credible because they could not positively identify the Defendant; (2) that the testimony of the three admitted co-participants in the robbery was not credible because they all received favorable treatment in exchange for it and they engaged in a crime of dishonesty and violence; and (3) that the testimony of three witnesses offered by the Defendant were credible because they had nothing to gain by testifying at trial.

The Defendant's weight claim fails. The jury is free to believe all, part, or none of the evidence, and to make credibility determinations. Conflicts between testimonies are for the jury to resolve, and review of the jury's credibility determinations is not for the trial court to undertake. Even if there Court were to undertake such a matter, the jury's credibility determinations were quite understandable in the instant case. Upon careful consideration of the record, the Court does not find any of the evidence presented by the Defendant in support of his

13

weight claim so clearly of greater weight than the evidence presented supporting his convictions that failure to give it credence amounts to a denial of justice. Simply put, the verdicts are not so contrary to the evidence as to shock one's sense of justice.

## CONCLUSION

For the abovementioned reasons, the Court finds the verdicts are supported by sufficient evidence and they are not against the weight of the evidence. Pursuant to the attached Order, Defendant's Post-Sentence Motion is denied.

**IN THE COURT OF COMMON PLEAS OF THE 39TH JUDICIAL DISTRICT
OF PENNSYLVANIA - FRANKLIN COUNTY BRANCH**

| | | |
|---|---|---|
| Commonwealth of Pennsylvania, | : | **CRIMINAL ACTION** |
| | : | |
| vs. | : | **No: 543-2014** |
| | : | |
| John Michael Zawierucha, | : | |
| Defendant | : | **Honorable Carol L. Van Horn** |

## ORDER OF COURT

AND NOW THIS ___*19th*___ day of December, 2014, the Court having reviewed and considered the Defendant's Post-Sentence Motion and upon review of the applicable law;

IT IS HEREBY ORDERED THAT the Defendant's Post-Sentence Motion is **DENIED.**

YOU ARE HEREBY ADVISED THAT Pursuant to Rule 720(4) of the Pennsylvania Rules of Criminal Procedure:

1. You have the right to appeal from the Court's decision disposing of your motion [Pa. R. Crim. P. 720(4)(a)];

2. If you choose to exercise that right, you must do so within thirty (30) days of the date of this order [Pa. R. Crim. P. 720(4)(a); Pa. R. App. P. 903(a)];

3. You have the right to assistance of counsel in the preparation of your appeal [Pa. R. Crim. P. 720(4)(b)];

4. If you are indigent, you have the right to appeal in forma pauperis and to have counsel appointed to represent in your appeal [Pa. R. Crim. P. 720(4)(c); Pa. R. Crim. P. 122];

5. You have the qualified right to bail under Pa. R. Crim. P. 521(b) [Pa. R. Crim. P. 720(4)(d)].


*Pursuant to Pa. R. Crim. P. 114, the Clerk of Courts shall immediately docket this Opinion and Order of Court and record in the docket the date it was made. The Clerk shall forthwith furnish a copy of the Opinion and Order of Court, by mail or personal delivery, to each party or attorney, and shall record in the docket the time and manner thereof.*

By the Court,

Carol L. Van Horn, J.


Copies:
Lauren Sulcove, Esq., First Assistant District Attorney
Kenneth Young, Esq., Attorney for Defendant
Todd Sponseller, Esq., Trial Counsel for Defendant

16